UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JOHN HAUGER<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendant. | Case No. CV423-303<br><br>**COMPLAINT FOR VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; EQUITABLE RELIEF; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff John Hauger herein sets forth the allegations of his Complaint against Defendant METROPOLITAN LIFE INSURANCE COMPANY (MetLife); as follows:

**JURISDICTION**

1.     Plaintiff brings this action for relief pursuant to Sections 1132(a)(1)(B) and 1132(a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 1132(e), (f), and (g), as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and

governed under ERISA. Jurisdiction is predicated upon these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan.

3. Plaintiff seeks relief, including but not limited to disability benefits in the correct amount related to Defendant's improper offset of Plaintiff's disability benefits; prejudgment and post judgment interest; general and special damages; attorneys' fees and costs; injunctive relief requiring MetLife to cease its improper offset; and any other form of equitable relief that may arise during the pendency of this action and that the Court may deem appropriate.

## PARTIES

4. Plaintiff JOHN HAUGER. is, and at all times relevant was, a resident of Georgia.

5. At all relevant times, JOHN HAUGER participated in the SMART Group VSTD Plan (the "Plan"), an employee welfare benefit plan within the meaning of Section 1002(1). The Plan is attached as **Exhibit 1**.

6. Disability benefits under the Plan were at all relevant times administered by MetLife. Pursuant to the Plan, MetLife had fiduciary authority to approve and deny claims for benefits, and to determine the amount of benefits owed to persons who qualify as disabled under the terms of the Plan. MetLife was therefore a

named fiduciary pursuant to 29 U.S.C. § 1102(a) and a functional fiduciary as defined by 29 U.S.C. § 1002(21).

7.     MetLife is an insurance provider authorized to transact and currently transacting the business of insurance in the State of Georgia and is the claims administrator of the Plan and the specific coverage at issue herein. Defendant can be served at CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046-4805.

**FACTS**

8.     At all relevant times, the Plan was a welfare plan that offered, *inter alia*, disability benefits to employees and their beneficiaries, including Plaintiff. This action involves disability claims originally paid but then offset by the Plan's mental health claim administrator.

9.     At all relevant times, the Plan was in full force and effect, with all premiums fully paid.

10.    Plaintiff John Hauger worked as a freight conductor for CSX Transportation for 14 years. As such, he was a member of the SMART union, a benefit of which was the opportunity to subscribe to and pay for the subject policy. Mr. Hauger chose to do that and the disability policy was in force and effect, all premiums paid, at the time of the injury, *infra.*

11.    Mr. Hauger suffered a personal injury on May 3, 2018 while working as a conductor for CSX Transportation, Inc. As a result, he began drawing temporary

sickness benefits from the United States Railroad Retirement Board, and from Defendant MetLife. The providers of temporary sickness benefits are subrogated and protected to the extent of those sickness benefits in the event of a third-party recovery.

12. On November 11, 2019, as a result of the permanent injuries suffered by Mr. Hauger in the truck-train collision in which he was involved on May 3, 2018, MetLife began paying Plaintiff monthly long-term disability payments. The monthly payments varied for reasons that MetLife has not disclosed, but the base payment was $3,333.34.

13. On June 29, 2020, a settlement agreement was signed with the third-party tortfeasors involved in the May 3, 2018 collision, providing for the recovery of damages by Mr. Hauger. On June 25, 2020, Plaintiff, through his undersigned attorney, reached a settlement with Defendant MetLife to pay $7,631.11 in full satisfaction of Defendant's claimed lien of $11,419.67. The agreed-upon amount was timely paid.

14. Plaintiff's law firm also paid $30,735.96 to the Railroad Retirement Board on Plaintiff's behalf in full satisfaction of its lien. MetLife continued to pay Mr. Hauger his disability payments.

15. On April 29, 2021, the United States Railroad Retirement Board awarded Plaintiff a disability annuity under the Railroad Retirement Act, paying Plaintiff $2,639.83 per month, effective August 1, 2019. The amount was approximately

$690 less than Plaintiff's base payment under the Plan .

16.     On November 7, 2022, MetLife notified Plaintiff Hauger of its right to set off his benefits, and claimed it was entitled to overpayments of $86,079.35 made between November 2019 and October 2022. The letter further stated that Mr. Hauger would continue to receive a payment in the amount of $693.51, equal to the difference between the benefit Plaintiff Hauger was entitled to under the Plan and the disability annuity he was receiving. *See* MetLife letter of November 4, 2022, attached as **Exhibit 2**.

17.     Plaintiff filed an appeal of that determination dated January 19, 2023, see attached as **Exhibit 3**, and MetLife denied the appeal by notice of March 23, 2023, attached as **Exhibit 4**.

18.     By accounting dated May 24, 2023, MetLife claimed that Mr. Hauger still owed it $64,316.24. See accounting attached as **Exhibit 5**.

19.     Defendant last made a payment to Plaintiff on or about February 8, 2023, in the amount of $693.51. As of the date of the filing of this Complaint, Defendant continues to withhold 100% of Plaintiff's disability payments.

20.     In calculating the benefits Plaintiff received from the Railroad Retirement Board, Defendant failed to account for the $30,735.96 paid to the Board on Plaintiff's behalf. Because this payment reduced the net payments Plaintiff had received from the Railroad Retirement Board between 2019 and 2022, it necessarily also reduced any offset MetLife could assess.

21. Defendant MetLife also inaccurately accounted for the payment it received from Plaintiff from his settlement funds, reducing their outstanding balance by the amount of his payment ($7,631.11) not the amount of its claimed lien that it had agreed to waive ($11,419.67). *See* Exhibit 5. As a result, the outstanding balance is overstated by an additional $3,788.56.

22. As a result of Defendant's miscalculations, and its failure to exercise its duties as a fiduciary by prudently investigating and evaluating the offsets it claimed, Defendant MetLife overstated the amount of overpayment by $34,524.52.

## **COUNT I – Claim for Benefits Under 29 U.S.C. § 1132(a)(1)(B)**

23. Plaintiff realleges paragraphs 1-22 as if fully set out herein.

24. Defendant wrongfully recovered overpayments from Plaintiff by withholding payments, by failing to give Plaintiff proper credit for previous payments made to Defendant and by overstating the amount of benefits received by Plaintiff from third-parties, i.e., the United States Railroad Retirement Board.

## **COUNT II – Breach of Fiduciary Duty Under 29 U.S.C. § 1104**

25. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully set out herein.

26. At all times herein, Defendant MetLife was a fiduciary with respect to its exercise of authority over the management and administration of the Policy and the disposition of the Plan and its assets.

27.     The claim asserted in Count I does not provide Plaintiff with an adequate remedy at law in light of Defendant MetLife's continuing course of conduct in abusing its power to withhold disability payments despite clear and convincing evidence that its claimed overpayment amount was excessive.

28.     29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like charter and with like aims.

29.     At all times material, Defendant MetLife violated these duties by failing and refusing to properly investigate the credits and payments made by Plaintiff and on Plaintiff's behalf that lowered the amount of Defendant's claimed overpayment, and by failing to provide intelligible explanation of such credits and payments and the amounts owed by Plaintiff and by constantly and consistently reassigning responsibility for his file to different departments and individuals in order to impede productive discussions and negotiations.

30.     As a result of Defendant's breaches of its fiduciary duties, Plaintiff has been harmed and Defendant has been permitted to retain assets and generate earnings on those assets to which Defendant was not entitled.

WHEREFORE, Plaintiff prays that the Court grant the following relief:

a. Order MetLife to provide a reasonably comprehensive accounting of all debits and credits on Plaintiff's account and explanations for each entry,

including citation to specific language in the Plan justifying each deduction;

b. Order MetLife to recognize all proper payments and credits made by or on behalf of Plaintiff and reduce its claim of overpayment in accordance therewith;

c. Award Plaintiff reasonable attorney's fees and costs incurred pursuant to 29 U.S.C. § 1132(g);

d. All other equitable relief the Court deems appropriate to redress Defendant's violations and enforce the Plan and ERISA.

Respectfully submitted this 10th day of October, 2023.

>By: */s/ Harry B. Bailey, III*
>Harry B. Bailey, III (GSB#032105)
>JonesGranger
>1201 Peachtree Street NE, Suite 300
>Atlanta, GA 30361
>Phone: (404) 870-9020
>hbai@jonesgranger.com